UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – FLINT

In re:

| | |
|---|---|
| JEFFREY B. MABRY and<br>YOLANDA S. MABRY,<br><br>    Debtors.<br>_____/ | Case No. 13-32700-dof<br>Chapter 7 Proceeding<br>Hon. Daniel S. Opperman |

JEFFREY B. MABRY and
YOLANDA S. MABRY,

    Plaintiffs,

v.                                                                    Adv. Pro. No. 13-03292

EARL SHAW

    Defendant.
_____/

## OPINION DISMISSING COMPLAINT

Jeffrey and Yolanda Mabry ("Plaintiffs") filed this adversary proceeding to recover funds that Ms. Mabry paid to her brother, Earl Shaw ("Defendant"), in the year preceding the filing of their bankruptcy case. In their Complaint, the Plaintiffs claim that the payments Ms. Mabry made to the Defendant were preferential transfers subject to avoidance pursuant to 11 U.S.C. §§ 547 and 550 and they seek the return of those funds.

### Statement of Facts and Procedural Background

On September 12, 2011, after a bench trial, the Defendant obtained a Judgment against Ms. Mabry in the 67th District Court of Michigan, Flushing, in the amount of $16,848.80. On September 16, 2011, only four days after the Judgment was entered against her, Ms. Mabry filed

1

a motion seeking to pay the Judgment in installments of $75.00 per month. The Defendant objected to her motion. After a hearing on the matter, the court granted Ms. Mabry's motion over the Defendant's objection, but increased the amount of the installment payments significantly. On October 25, 2011, the court entered an order providing that, beginning on November 5, 2011, Ms. Mabry "may pay the judgment . . . in installments" of $425.00 per month. That order also stated: "No writ of garnishment on this judgment shall issue for personal work and labor until further order of the court."

In November, 2011, the Defendant filed a garnishment of Ms. Mabry's 2011 Michigan tax refund.[1] The state tax garnishment was quickly released and any funds were ordered to be returned.

The Plaintiffs filed their joint Chapter 7 bankruptcy petition on August 15, 2013. The Plaintiffs listed the installment payment funds as an exempt asset on their schedules. The Trustee did not seek to avoid the transfers. The Plaintiffs filed this adversary proceeding on October 23, 2013, to recover the $5,100.00 Ms. Mabry paid to the Defendant pursuant to the installment order in the one year preceding their bankruptcy case. The Defendant filed an Answer to the Complaint on November 4, 2013. The Court conducted a final pre-trial conference, at which the parties indicated that a trial was not necessary in this case and that they preferred to submit the matter to the Court by way of briefs. The Defendant filed his brief on July 7, 2014, and the Plaintiffs filed their brief on July 8, 2014. The Defendant and the Plaintiffs filed reply briefs on July 28, 2014.

---

[1] The Plaintiffs do not claim that the funds they are seeking to recover were taken as a result of the State of Michigan income tax garnishment or any other collection action taken by the Defendant. The only funds the Plaintiffs are seeking to recover stem from the monthly installment payments made by Ms. Mabry to the Defendant pursuant to the installment payment order.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F) (proceedings to determine, avoid, or recover preferences).

The issues in this matter arise from Title 11 of the United States Code and do not involve any matter which limits this Court's jurisdiction as detailed by the United States Supreme Court in *Stern v. Marshall*, ---- U.S. ----, 131 S. Ct. 2594, 2608, 180 L.Ed.2d 475 (2011), and later by the United States Supreme Court in *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014). *See also Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012).

## Discussion

11 U.S.C. §§ 547 and 550 allow a Trustee to set aside certain transfers of a Debtor's property which occurred before the bankruptcy petition was filed. In some instances, when the Trustee does not seek to set aside the transfers, the debtor is allowed to do so and may seek to exempt and keep the recovered asset or funds.

In this case, there is no dispute that the payments Ms. Mabry made to the Defendant are subject to avoidance. The issue is whether the Plaintiffs, as debtors, have standing to pursue the avoidance action.

11 U.S.C. § 522(h) addresses those instances in which a debtor has standing to pursue avoidance claims in order to maximize the property a Debtor may exempt. To be entitled to pursue such a claim: (1) there must have been a transfer which the Trustee could have avoided; (2) the Trustee must have not have sought to avoid the transfer; and (3) the Debtor must be able to exempt the property that was transferred under 11 U.S.C. § 522(g)(1).

Starting with the Section 522(h) analysis, Ms. Mabry made several transfers to the Defendant within one year of the filing of the bankruptcy case. The Trustee could have avoided some, if not all of the transfers, under Section 547. The Trustee in this case has not sought to avoid those transfers. Lastly, however, to have standing and to be allowed to avoid the transfer, the Plaintiffs must satisfy section 11 U.S.C. § 522(g)(1), which provides in pertinent part:

> (g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—
>
> > (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and
> > (B) the debtor did not conceal such property . . . .

Since there is no allegation of concealment, the determinative issue in this case is whether the transfers made by Ms. Mabry to the Defendant were "voluntary". The burden is on the debtor to establish that the transfer was not "voluntary." *In re Snyder*, 108 B.R. 150, 152 (Bankr. N.D. Ohio 1989).

The bankruptcy code does not define "voluntary" or "involuntary". It has thus fallen to the courts to determine what renders a transfer involuntary and subject to avoidance by a debtor.

In *Dickson v. Countrywide Home Loans (In re Dickson)*, 655 F.3d 585 (6th Cir. 2011), the Chapter 13 debtor sought to avoid a lien claimed by Countrywide on the debtor's mobile home. Countrywide's attempts to assert a consensual lien on the mobile home failed, and the only lien it could assert was the lien it obtained in a judicial foreclosure action. Countrywide obtained the lien when it sought and obtained an In Rem Order which held that the mobile home was "deemed converted to real estate and considered to comply with K.R.S 186A.297." That order effectively rendered the mobile home subject to the real estate mortgage Countrywide had

4

13-03292-dof    Doc 23    Filed 08/28/14    Entered 09/02/14 11:42:34    Page 4 of 9

previously obtained on the debtor's land. That order was entered within 90 days of the filing of debtor's bankruptcy filing.

Countrywide sought to have the stay lifted so as to be allowed to pursue the foreclosure of both the land and the mobile home. Both the debtor and the Trustee objected to the taking of the mobile home, but only the debtor pursued an adversary proceeding to avoid the lien on the mobile home. The debtor prevailed. On appeal, the Sixth Circuit agreed with the lower court and upheld the determination that the lien was an involuntary transfer appropriately avoided by the Debtor.

In considering whether the In Rem Order and the lien were "voluntary", the *Dickson* Court stated:

> While the Code does not define this term, the bankruptcy courts "have generally concluded, ... that an *involuntary* transfer 'occurs when ... property is transferred by operation of law, such as by means of an execution of judgment, repossession, or garnishment.' " *Funches v. Household Fin. Consumer Discount Co. (In re Funches),* 381 B.R. 471, 493 (Bankr. E.D. Pa. 2008) (quoting *Berman v. Forti,* 232 B.R. 653, 656 (D. Md. 1999)); *see also In re Dipalma,* 24 B.R. 385, 387 (Bankr. D. Mass. 1982) (noting that a transfer created "by operation of law" is involuntary). Here, the judgment was not a consent judgment, but a default judgment. Accordingly, the state-court conversion of Dickson's manufactured home to an improvement to real property was involuntary because it was accomplished by operation of law without consent.

*In re Dickson*, 655 F.3d 585, 593 (6th Cir. 2011).

In a recent case, *In re Diamantis*, 13-11201, 2014 WL 1203182 (Bankr. N.D. Ohio Mar. 24, 2014), the court relied on *Dickson* and provided an expanded explanation of what constitutes an "involuntary" transfer, stating:

> Following this reasoning, a transfer is involuntary if it occurs by operation of law without consent. *See, for example, Maus v. Joint Twp. Dist. Mem'l Hosp. (In re Maus),* 282 B.R. 836, 838 (Bankr. N.D. Ohio 2002) (stating that "it is clear that the nature of the garnishment action undertaken against the Debtor qualifies, for purposes of § 522(g), as an involuntary transfer of property"). On the other hand, a transfer is generally viewed as voluntary where the debtor consents to the

5

transfer. *See, for example, Trentman v. Meritech Mortg. Servs. (In re Trentman),* 278 B.R. 133, 135 (Bankr .N.D. Ohio 2002) (stating that the grant of a security interest is generally considered to be voluntary because it is consensual); *Pilgreen v. Brown & Williamson Fed. Credit Union (In re Pilgreen),* 161 B.R. 552, 555 (Bankr. M.D. Ga. 1989) (debtor signed notes with provisions that allowed his employer to withhold funds to satisfy the debtor's obligations, making the resulting transfers voluntary); *Huebner v. Trapp (In re Huebner),* 18 B.R. 193, 195 (Bankr. W.D. Wisc. 1982) (transfers made under debtor's wage assignment, although made to avoid creditor's attempts to collect, deemed voluntary).

Some transfers to which a debtor consents may, however, still be considered to be involuntary where there is fraud, material misrepresentation, or coercion, each of which tends to negate a debtor's free will. *See for example, In re Pfiester,* 449 B.R. 422, 424 (Bankr. D.N. M. 2011) ("The marital settlement agreement ... was entered into by the parties in litigation. Each was represented by an attorney. There are no allegations of fraud, coercion, duress or unequal bargaining position."); *Rodriguez v. Bonds (In re Rodriguez),* 361 B.R. 887, 893 (Bankr. D. Ariz. 2007) (noting that an "involuntary transfer may occur under circumstances involving fraud, material misrepresentation or coercion"); *In re Corwin,* 135 B.R. 922, 924 (Bankr. S.D. Fla. 1992) (noting that there was no evidence of conduct or influence by the creditor, such as harassment, insults or shame which overcame the debtor's free will in making the transfer); *Reaves v. Sunset Branch, Nat'l Bank of South Dakota (In re Reaves),* 8 B.R. 177, 181–82 (Bankr. D. S.D. 1981) (finding a transfer to be involuntary because the creditor pressured the debtor into signing the mortgage and concealed material facts). Interpreting the term "voluntary" to exclude such circumstances is consistent with the dictionary definition of the term "voluntary," which refers to acts "done by design or intention" and "unconstrained by interference; not impelled by outside influence[.]" Black's Law Dictionary 1605–6 (8th ed.2004).

Additionally, there is case authority stating that a transfer is involuntary where the debtor lacks essential facts that are within the creditor's knowledge, the creditor does not make the debtor aware of those facts, and the debtor would not have made the transfer had he been aware. *Seidel v. First Nat'l Bank of Palmerton (In re Seidel),* 27 B.R. 347, 352 (Bankr. E.D. Pa. 1983).

Putting these concepts together, a transfer is involuntary within the meaning of § 522(g)(1) if it occurred (1) by operation of law without consent; or, (2) if the debtor consented, but the consent was the product of fraud, material misrepresentation, coercion, duress or similar circumstances.

*In re Diamantis*, 2014 WL 1203182 at *4-5.

In this case, there was no court order compelling Ms. Mabry to pay the Defendant. The payments were not a result of a garnishment or execution. Four days after the Judgment was

entered against her, Ms. Mabry sought an order allowing her to pay the Judgment in installments of $75.00 per month. Over the Defendant's objection, after a hearing, the court entered an order allowing Ms. Mabry to pay the Judgment in monthly installments of $425.00. The language in that order is permissive, as it states that Ms. Mabry "may pay" the Judgment in installments. Thereafter, despite the monthly installment amount being higher than she originally sought, Ms. Mabry made regular monthly installment payments of $425.00 per month leading up to her bankruptcy filing.

Although Ms. Mabry most likely had the thought that the Defendant would pursue collection by garnishing her wages if she failed to comply with the installment payment order, that nagging thought is insufficient for the Court to conclude that she made these payments involuntarily. *See Huebner v. Trapp (In re Huebner),* 18 B.R. 193, 195 (Bankr. W.D. Wis. 1982) (transfers made under debtor's wage assignment, although made to avoid creditor's attempts to collect, deemed voluntary); *In re Snyder*, 108 B.R. at 154 (citing *In re Trevino*, 96 B.R. 608, 613 (Bankr. E.D. N.C. 1989) ("a transfer is involuntary only when it is beyond the debtor's personal control. It is not involuntary when a transfer is made simply because the debtor knows that the creditor would otherwise pursue other collection efforts."). Any person who owes a debt to a creditor, whether it is a mortgage debt, a credit card debt, or a car loan debt, thinks about the possibility of the creditor taking collection action against her if she fails to make the required payments. The fact that this thought is in the back of a person's mind when she makes her regular monthly payments does not make those payments involuntary. Likewise, in this case, Ms. Mabry made the monthly installment payments until she filed her bankruptcy petition, and the fact that she knew that the Defendant had the option to garnish her wages if she failed to make the monthly installment payments does not make those payments involuntary.

7

13-03292-dof    Doc 23    Filed 08/28/14    Entered 09/02/14 11:42:34    Page 7 of 9

There is no allegation or evidence that, although Ms. Mabry made the monthly installment payments voluntarily, the payments were the product of fraud, material misrepresentation, coercion, duress or similar circumstances.

Ms. Mabry has failed to meet her burden of establishing that the transfer was not voluntary. The fact that she made the monthly installment payments with the thought in the back of her mind that the Defendant would garnish her wages if she failed to do so, without something more, is insufficient to meet the burden of establishing that the payments were made involuntarily. Based on the holding in *Dickson*, this Court concludes that the Sixth Circuit requires more than a fear that a creditor will seek an execution of judgment or garnishment to put payments, otherwise voluntarily made, into the involuntary category.

Accordingly, the Court concludes that Ms. Mabry made the monthly installment payments to the Defendant voluntarily and, therefore, the Plaintiffs do not have standing pursue this action to avoid the transfers and to recover the payments Ms. Mabry made to the Defendant during the year preceding her bankruptcy filing.

8

13-03292-dof    Doc 23    Filed 08/28/14    Entered 09/02/14 11:42:34    Page 8 of 9

Conclusion

For the reasons set forth in this Opinion, the Court concludes that the Plaintiffs have failed to meet their burden of proving that Ms. Mabry made to the Defendant were involuntary, and, therefore, the Plaintiffs do not have standing to pursue avoidance of the transfers and recovery of the payments. The Plaintiffs' complaint is dismissed. Counsel of the Defendant is directed to prepare and submit an order consistent with this Opinion and consistent with the procedural rules of this Court.

.

**Signed on August 28, 2014**

                                                   **/s/ Daniel S. Opperman**
                                               **Daniel S. Opperman**
                                               **United States Bankruptcy Judge**